42 So.3d 252 (2010)
Lindsay KEZAL, a/k/a Lindsey Justine Kezal, Appellant,
v.
STATE of Florida, Appellee.
No. 2D09-1010.
District Court of Appeal of Florida, Second District.
July 9, 2010.
*253 James Marion Moorman, Public Defender, and Matthew D. Bernstein, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Tonja Rene Vickers, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
Lindsay Kezal challenges the sentences imposed on her following her no contest plea to the charges of DUI manslaughter, *254 section 316.193(3)(c)(3), Florida Statutes (2005), and DUI with serious bodily injury to another, section 316.193(3)(c)(2). She argues that the circuit court erred in determining that it could not consider the mitigating factors listed at subsections (2)(c) and (2)(j) of section 921.0026, Florida Statutes (2005), with respect to her request for a downward departure because her offenses involved driving under the influence. We agree with Ms. Kezal's argument in part. Based on the controlling authority of State v. VanBebber, 848 So.2d 1046 (Fla.2003), we vacate Ms. Kezal's sentences and remand for the circuit court to consider the factors outlined in subsection (2)(j) in determining her sentences.
The analytical framework a trial court must follow in considering a request for a downward departure from the sentencing guidelines is well established:
"A trial court's decision whether to depart from the guidelines is a two-part process." Banks v. State, 732 So.2d 1065, 1067 (Fla.1999). The trial court must first determine whether it can departwhether the defendant has met the burden of establishing sufficient factual support for a valid legal ground. "This aspect of the court's decision to depart is a mixed question of law and fact and will be sustained on review if the court applied the right rule of law and if competent substantial evidence supports its ruling." Id. at 1068. The trial court must then decide whether it should depart"a judgment call within the sound discretion of the court." Id.

State v. Green, 890 So.2d 1283, 1286 (Fla. 2d DCA 2005). If the trial court mistakenly believes that it legally does not have the discretion to depart and the reviewing court is unable to determine whether the trial court would have imposed the same sentence if it had understood its discretion, then the sentence imposed must be vacated and the case remanded for resentencing. See Torres v. State, 17 So.3d 1282, 1282-83 (Fla. 2d DCA 2009) (citing Hines v. State, 817 So.2d 964, 965 (Fla. 2d DCA 2002)).
Here, Ms. Kezal argues that the circuit court mistakenly determined that it did not have the discretion to impose a departure sentence under subsections (2)(c) and (2)(j) because Ms. Kezal's offenses involved driving under the influence. Section 921.0026 provides in pertinent part, as follows:
This section applies to any felony offense, except any capital felony, committed on or after October 1, 1998.
(1) A downward departure from the lowest permissible sentence, as calculated according to the total sentence points pursuant to s. 921.0024, is prohibited unless there are circumstances or factors that reasonably justify the downward departure. Mitigating factors to be considered include, but are not limited to, those listed in subsection (2). The imposition of a sentence below the lowest permissible sentence is subject to appellate review under chapter 924, but the extent of downward departure is not subject to appellate review.
(2) Mitigating circumstances under which a departure from the lowest permissible sentence is reasonably justified include, but are not limited to:
....
(c) The capacity of the defendant to appreciate the criminal nature of the conduct or to conform that conduct to the requirements of law was substantially impaired.
....
(j) The offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse.
....
(3) The defendant's substance abuse or addiction, including intoxication at *255 the time of the offense, is not a mitigating factor under subsection (2) and does not, under any circumstances, justify a downward departure from the permissible sentencing range.

(Emphasis added.)
In State v. VanBebber, 848 So.2d 1046, 1049 (Fla.2003), the Supreme Court of Florida specifically determined that subsection (2)(j) is available to support a downward departure from a guidelines sentence for a felony DUI conviction, stating:
Section 921.0026 plainly states, "This section applies to any felony offense, except any capital felony, committed on or after October 1, 1998." Because the mitigator in section 921.0026(2)(j) applies to any felony offense, except any capital felony, committed on or after October 1, 1998, it is available to support a downward departure from a felony DUI conviction. The fact that the Legislature specifically exempted only capital felonies is further support for the conclusion that section 921.0026(2)(j) applies to felony DUI convictions.
(Footnotes omitted.)
In VanBebber, the State argued that applying subsection (2)(j) to felony DUI convictions conflicted with subsection (3), which prohibits a downward departure based upon the defendant's "substance abuse or addiction, including intoxication at the time of the offense." Id. at 1050 (quoting § 921.0026(3)). But the supreme court found that there was no conflict. It said:
Under subsection (3), intoxication at the time of the offense cannot be used as a mitigating factor to support a downward departure from a sentence under the sentencing guidelines. There is no prohibition, however, against using the mitigators listed in section 921.0026(2) in cases where the offense is intoxication. In this case the trial court imposed a downward departure on the fact that VanBebber was remorseful for an isolated incident committed in an unsophisticated manner. Again, if the Legislature intended to specifically exempt felony DUI offenses from this statutory scheme this Court must presume that it would have explicitly done so in the statute.
Id. So the supreme court's holding in VanBebber establishes that subsection (2)(j) provides a valid basis for a departure in a felony DUI case. Also, the court's reasoning supports the conclusion that subsection (2)(c) would be available to support a downward departure from a guidelines sentence from a felony DUI conviction. As the supreme court noted, section 921.0026 applies to any felony offense except a capital felony. If a trial court has discretion to depart upon proof of the circumstances set forth in subsection (2)(j) with respect to a felony DUI offense, then it must have the discretion to depart upon proof of the circumstances outlined in subsection (2)(c) with respect to a felony DUI offense.
We now turn to the circuit court's application of subsections (2)(c) and (2)(j) in sentencing Ms. Kezal in this case. In considering subsection (2)(j), the circuit court found that Ms. Kezal had shown remorse. The circuit court also found that the incident was isolated because Ms. Kezal did not have any prior offenses. But the circuit court was troubled by the third requirement of subsection (2)(j)whether the offense was committed in an unsophisticated manner. With respect to that requirement, the circuit court stated:

Now, the problem with applying it to DUI manslaughter is that DUI is never an intentional offense. I mean, they don't mean to kill anybody, and if they did they would be charged with murder....

*256 But being intoxicated or impaired means your judgment is impaired. In other words, the judgment that we all employ in our daily lives that keeps us out of trouble, for the most part, and I better not do that because of the consequences, that's impaired. So you could almost make the point that every DUI manslaughter is unsophisticated because they don't mean to do it....
How does ithow do you avoid saying that every DUI manslaughter is unsophisticated?

....
What I'm struggling with here though is the fact that the offense is almost inherently unsophisticated. I mean, nobody sets out to do this. Nobody sets out to get drugged up or drunk and kill somebody. Againand if they did they'd be charged with murder.
(Emphasis added.) When the circuit court announced its sentencing decision, it stated further:
And as to the part about unsophisticated manner, I think Mr.not Mr. Coleman [the assistant state attorney]. I think my own interpretation is the closest to being correct. Other than the fact that it's an inherently unsophisticated offense, if the legislature really felt that then they'd reduce the penalty for DUI manslaughter. I find no basis to depart downward from the sentencing guidelines.
(Emphasis added.) The foregoing comments reflect that the circuit court incorrectly concluded that it could not depart under subsection (2)(j) for an offense involving a DUI because every DUI offense is inherently unsophisticated.[1]
We are unable to determine from our review of the record whether the circuit court would have imposed the same sentences if it had understood that it had the discretion to depart under subsection (2)(j) upon proof of each element of that subsection. See Torres, 17 So.3d at 1282-83; Hines v. State, 817 So.2d 964, 965-66 (Fla. 2d DCA 2002). For this reason, we vacate Ms. Kezal's sentences and remand for resentencing. Upon resentencing, the circuit court must consider subsection (2)(j) as a possible basis for a departure sentence.
We reach a different conclusion with respect to Ms. Kezal's argument that the circuit court improperly concluded that subsection (2)(c)the defendant's capacity to appreciate the criminal nature of the conductcould not provide a valid basis for departure. Ms. Kezal's argument on this factor was based on evidence that at the time of the accident that led to the charges, she was involved in an abusive relationship. The circuit court's comments at the sentencing hearing demonstrate that although it may have improperly concluded that subsection (2)(c) could not apply in a DUI case, it also rejected Ms. Kezal's abusive relationship argument as a basis for establishing diminished capacity. Because the court's remarks make it clear that it would have not exercised its discretion to depart under the facts of this case based on diminished capacity, we find no reversible error with respect to the circuit court's handling of the request for departure based on subsection (2)(c). See Torres, 17 So.3d at 1282-83.
As a result of our conclusion that the circuit court incorrectly determined that subsection (2)(j) could not provide a valid basis for departure in the context of a felony DUI case, we vacate Ms. Kezal's sentences and remand for the circuit court to consider that factor as a possible basis *257 for departure when it resentences Ms. Kezal. We affirm the judgment.
Judgment affirmed, sentences vacated, and case remanded.
CRENSHAW, J., Concurs.
VILLANTI, J., Concurs specially in part and dissents in part with opinion.
VILLANTI, Judge, Concurring specially in part and dissenting in part.
I fully concur in the majority's decision to affirm the denial of a downward departure sentence pursuant to section 921.0026(2)(c). However, I respectfully dissent as to the portion of the opinion reversing Kezal's sentence and remanding for reconsideration of the departure reason listed in subsection (2)(j) because I believe the majority misreads the trial court's ruling on the applicability of that section. From my reading of the transcript of the entire sentencing hearing, I believe it is clear that the trial court understood that it had the authority to depart under subsection (2)(j) but found that Kezal had failed to prove that she committed her offenses in an unsophisticated manner. Accordingly, I would affirm.
This case involves a tragic situation in which Kezal, while driving under the influence of multiple drugs, drove through an intersection and collided with another car, killing her own four-year-old daughter and severely injuring the driver of the other car. A post-accident drug test showed that Kezal had methamphetamine, amphetamine, oxazepam, cannabis, and cocaine in her system at the time of the accident. These drugs, rather than the more traditional alcohol, formed the basis of the DUI charges at issue in this case.
After Kezal pleaded guilty to two of the three charges against her, the court held a sentencing and departure hearing. The court accepted Kezal's guilty plea, heard testimony from several individuals, and then turned to Kezal's request for a downward departure from the minimum sentence of 145.5 months under the Criminal Punishment Code. After rejecting the other possible statutory departure reasons, the court addressed subsection (2)(j), which permits a downward departure from the minimum sentence if the defendant has committed the offense in an unsophisticated manner and shown remorse and if the offense is an isolated incident.
The court first announced that it had no problem finding that Kezal had shown remorse and that the offense was an isolated incident. Turning to the unsophisticated manner element, the court asked Kezal's counsel, "what exactly does that mean in this context?" Counsel's response was that the court should look to "a pattern of conduct" by the defendant to determine whether the offense was committed in an "unsophisticated manner." When the court pointed out that a pattern of conduct would determine whether the offense was an isolated one, not an unsophisticated one, defense counsel argued that it should be considered as to both and added that the court should also consider the "level of planning" that went into the offense in determining the "unsophisticated" element. In response, the State pointed out that Kezal had used drugs in the past and knew their effects on her body and mind. Nevertheless, she got in the car with her four-year-old daughter and drove to McDonald's to get dinner. The State's implication was that the incident involved either a degree of knowledge of the risk associated with driving under the influence of these illicit drugs or a callous disregard for the safety of others. In either event, it could not be said the offense was committed in an "unsophisticated manner"; only that the offense itself could be considered unsophisticated.
After considering these arguments, the court rejected Kezal's claim for a downward *258 departure sentence under subsection (2)(j). Contrary to facts stated in the majority's opinion, the court did not find that Kezal had committed the offense in an unsophisticated manner. Instead, the court stated that it believed that DUI manslaughter was an "inherently unsophisticated offense" because "nobody sets out to do this." It then denied Kezal's request for a downward departure and sentenced her to the minimum sentence permissible under the Code.
A fair reading of the transcript of the entire sentencing hearing leads me to believe that the trial court fully understood that it had the authority to depart downward under subsection (2)(j) if Kezal could convince the court that she committed the DUI manslaughter offense in an unsophisticated manner. It is clear that the trial court's position was that it was not enough for Kezal to simply admit that she had committed an inherently unsophisticated offense. If that were the case, as the court noted, this departure reason would apply to every first DUI manslaughter conviction. Instead, the trial court's position was that Kezal was required to prove that something specific about the way she committed the offense at issue demonstrated that she had committed it in an unsophisticated manner, i.e., that there was some articulable way in which her offense was committed in a more artless, more simple, and less refined manner than other first-time DUI manslaughter offenses. See State v. Alonso, 31 So.3d 265, 267 (Fla. 4th DCA 2010) (citing State v. Merritt, 714 So.2d 1153, 1154 n. 3 (Fla. 5th DCA 1998), to define the term "unsophisticated" as "artless, simple and not refined"). When Kezal failed to do this, the trial court rejected her request for a downward departure.
The majority's conclusion that the court expressed its view that it did not have the legal authority to depart is not supported by the transcript. It is abundantly clear to me from the transcript of the entire sentencing hearing that the trial court fully understood its options and simply did not find a departure sentence appropriate for Kezal on any statutory ground. See Banks v. State, 732 So.2d 1065, 1068 (Fla. 1999) (holding that if there is a legal basis for departure, the trial court must then "determine whether it should depart, i.e., whether departure is indeed the best sentencing option for the defendant in the pending case" and that this decision "is a judgment call within the sound discretion of the court and will be sustained on review absent an abuse of discretion"). In my view, the transcript clearly demonstrates that the court recognized its authority to depart downward and elected not to exercise its discretion to do so. I can, therefore, find no error or abuse of discretion in either Kezal's sentence or the sentencing process. Hence, I would affirm her sentences in all respects.
NOTES
[1] In fairness to the circuit court judge, we note that neither defense counsel nor the prosecutor called the VanBebber case to his attention.