NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FELIX CAMACHO,                               )
                                             )
            Appellant,                       )
                                             )
v.                                           )     Case No. 2D13-3725
                                             )
STATE OF FLORIDA,                            )
                                             )
            Appellee.                        )
                                             )
_____ )

Opinion filed April 29, 2015.

Appeal from the Circuit Court for Lee
County; Bruce E. Kyle, Judge.

Howard L. Dimmig, II, Public Defender, and
Clark E. Green, Assistant Public Defender,
Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Christina Zuccaro,
Assistant Attorney General, Tampa, for
Appellee.


ALTENBERND, Judge.

        Felix Camacho appeals his sentences, arguing that the trial court erred by

concluding that it had no legal basis to grant a downward departure.  In Banks v. State,

732 So. 2d 1065 (Fla. 1999), the Supreme Court of Florida created a two-step process

for deciding whether to impose a downward departure sentence.  These two steps are

analyzed with at least three different standards of review on appeal.  As a result, to

facilitate review, it is very helpful for the trial court to explain on the record the precise basis for a decision to depart or not to depart from the guidelines when sentencing. In this case, depending upon the trial court's view of the evidence, the challenged sentence may have been properly imposed. But on the face of the record, it appears that the trial court erred during the first step of the two-step process by concluding that it had no authority to depart. Accordingly, we reverse the sentences and remand for resentencing.

Mr. Camacho was charged in case number 12-CF-015538 with burglary of an unoccupied dwelling and grand theft as a third-degree felony for events on January 24, 2012. In case number 12-CF-17055, he was charged with the same offenses for events on March 27, 2012, except that the grand theft was a second-degree felony. He pleaded nolo contendere to these charges with an open plea. At the sentencing hearing in June 2013, he presented testimony from several witnesses in an effort to obtain a downward departure sentence.

Mr. Camacho's theory for a downward departure was that his "capacity . . . to appreciate the criminal nature of [his] conduct or to conform [his] conduct to the requirements of law was substantially impaired." See § 921.0026(2)(c), Fla. Stat. (2012). In support of this theory, Mr. Camacho presented evidence that he had been a professional boxer from a young age and into his early forties. As a result of the trauma that he had incurred to his head over this extended period, Mr. Camacho had sustained brain damage.

In addition to the testimony of lay witnesses, he supported his theory of impaired capacity with the testimony of an expert, a neuropsychologist. The expert

testified that Mr. Camacho had some very significant neurocognitive deficits and that he suffered from "dementia pugilistica," a neurodegenerative disease caused by repeated blunt force trauma to the head. The expert performed tests on Mr. Camacho that indicated that he had significant frontal lobe damage that did not necessarily render him unable to differentiate between right and wrong but caused him to have poor judgment and difficulty controlling his impulses. The expert testified that Mr. Camacho also had other symptoms, including depression and severe headaches. He further testified that although dementia is a progressive disorder, Mr. Camacho's behavior could be managed with medication. The expert conceded on cross examination that Mr. Camacho was self-medicating for his symptoms with prescription drugs and that these drugs could also cause diminished inhibitions and impulse control. He did not know whether Mr. Camacho was under the influence of any drugs at the time of the offense.

The State argued that Mr. Camacho had failed to prove any legal ground for a downward departure in his case. First, it argued that in light of the evidence of self-medication, it was just as likely that Mr. Camacho's drug use was the cause of his impaired capacity as it was that his frontal lobe impairment was the cause and that section 921.0026(2)(c) therefore did not apply. It further argued that the case really involved a need for specialized treatment for a mental disorder that was related to substance abuse and, thus, was not a proper ground for departure under section 921.0026(2)(d). See § 921.0026(2)(d) (authorizing a downward departure where the "defendant requires specialized treatment for a mental disorder that is unrelated to substance abuse or addiction or for a physical disability, and the defendant is amenable to treatment").

- 3 -

At the end of the hearing, the trial court announced that it did not "think, legally" that Mr. Camacho "me[t] the criteria laid out in the statutes" and that it did not "think" that Mr. Camacho was "mitigation eligible." The minimum permissive sentence for which Mr. Camacho scored was 128.4 months' incarceration. If the court had imposed his sentences consecutively, it could have sentenced Mr. Camacho to up to fifty years in prison. Instead, the court imposed the maximum sentence for each offense to run concurrently—fifteen years' incarceration on the burglaries and the second-degree felony grand theft and five years' incarceration on the third-degree felony grand theft.

In Banks, the supreme court held that the decision of whether to depart from the guidelines is "a two-part process." 732 So. 2d at 1067. During the first step of this process, the trial court decides whether there is a legal basis to depart and whether the defendant has proven the factual support for that basis by a preponderance of the evidence. Id. If such a basis exists, the trial court then must make a discretionary decision under the totality of the circumstances of the case as to whether to depart. Id. at 1068; see also Fogarty v. State, 40 Fla. L. Weekly D21, D22 (Fla. 4th DCA Dec. 17, 2014).

At least from the perspective of an appellate court, the "two-part process" transforms into three questions during the appellate review. First, is there a valid legal basis for a downward departure? Legal grounds are provided by statute and in case law. Banks, 732 So. 3d at 1067 & n.2 (citing § 921.0016). This is a purely legal issue that is reviewed de novo. See id. at 1067. Second, is there competent, substantial evidence in the record to support a factual finding that the defendant's case fits within

the legal basis? Id. This factual issue is reviewed under the competent, substantial evidence test that is generally applicable to all issues of fact. Third, and finally, if there is a legal basis for a downward departure that is supported by competent, substantial evidence, was the trial court's discretionary decision to depart or not to depart an abuse of discretion? Id. at 1068.

If the trial court accepted all of the testimony presented at the hearing, the record contains competent, substantial evidence to allow the trial court to exercise its discretion to impose a downward departure sentence under section 921.0026(2)(c). This is true even if section 921.0026(2)(d) does not provide a basis for departure and even though a defendant's substance abuse or addiction cannot justify a downward departure.[1] The fact that the evidence presented the possibility that substance abuse may have been an independent cause of Mr. Camacho's impaired capacity does not mean that, as a matter of law, section 921.0026(2)(c) is unavailable as a basis for departure. Cf. Daniels v. State, 884 So. 2d 220 (Fla. 2d DCA 2004) (reversing for resentencing in a case involving section 921.0026(2)(d) because the trial court erroneously concluded that it had no authority to impose a downward departure after the defendant's expert testified that the defendant needed treatment for both his mental disorder and his substance abuse).

Our difficulty in this case is that we are uncertain whether the trial court's ruling was based on a rejection of some of the expert's opinions or whether it made a

---

[1]Under section 921.0026(3), "[e]xcept as provided in paragraph (2)(m), the defendant's substance abuse or addiction, including intoxication at the time of the offense, is not a mitigating factor under subsection (2) and does not, under any circumstances, justify a downward departure from the permissible sentencing range."

- 5 -

legal error by concluding that no legal basis for a departure existed because there was evidence of substance abuse. Based on the court's limited ruling, we are inclined to believe that the trial court erroneously concluded that it did not have the authority to reach the discretionary decision in step two. As was the case in Daniels, the trial court did not state that Mr. Camacho failed to meet his evidentiary burden or indicate that it was rejecting any portion of the expert's testimony. See Daniels, 884 So. 2d at 222. Finally, we are unable to determine from the record whether the circuit court would have imposed the same sentence if it had understood that it had authority to depart. We must therefore vacate Mr. Camacho's sentences and remand for resentencing. See Kezal v. State, 42 So. 3d 252, 256 (Fla. 2d DCA 2010).

      The trial court should be forgiven if it thinks we are demanding that it express its reasoning with excessive precision. We do not fault the trial court; the law simply requires that it jump through several hoops to permit appellate review of the decision. The attorneys involved in downward departure hearings need to assist the court so that the record on appeal will provide answers to the three important questions: (1) What is the specific legal ground for a downward departure that the court finds is legally available or unavailable? (2) Has the defendant presented competent, substantial evidence to support that legal ground? (3) If so, what are the circumstances that cause the trial court to exercise its discretion to grant or deny a downward departure sentence? Although we find the issue preserved in this case, defense attorneys should take care to direct their objections at these hearings to the issues that will be reviewed on appeal.

On remand, the trial court already has an adequate record from which to resolve these issues. We leave it to the discretion of the trial court, after consulting with counsel, to decide whether it should conduct a completely new sentencing hearing or whether it can rule based on the record already before it. Mr. Camacho has not challenged his judgments of conviction in this appeal, and those judgments are not affected by this decision.

Affirmed in part, vacated in part, and remanded.

CRENSHAW and MORRIS, JJ., Concur.